UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY JACKSON,<br><br>   Defendant. | Case No. 20-CR-10270-MLW |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Sentencing Memorandum in connection with the defendant Anthony Jackson's sentencing, scheduled for December 21, 2021. The Government recommends a 27-month sentence of imprisonment – at the high end of the Guidelines Sentencing Range ("GSR") that would apply if the crack cocaine involved in the offense and relevant conduct were treated the same as cocaine powder under the United States Sentencing Guidelines ("USSG" or "Guidelines") – as well as supervised release for 3 years thereafter. The Government asks that the Court impose this proposed sentence.

## FACTS

Jackson has been convicted of one count of distribution of and possession with intent to distribute cocaine base, and one count of possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). These charges stem from Jackson's sale of cocaine base to a cooperating witness ("CW") working with the FBI in September 2020 and from the discovery of

cocaine base on his person during his arrest in October 2020. *See* PSR ¶¶ 10-11.[1] During the charged September sale, the CW entered Jackson's vehicle at the agreed meeting location in Cambridge. PSR ¶¶ 10-11.  The CW provided Jackson with $500 and Jackson gave the CW a clear plastic bag containing an off-white rock like substance. PSR ¶ 10.  Jackson also sold cocaine base and cocaine to the CW on four other occasions in September and October of 2020. PSR ¶¶ 12-16.  In each of the first three incidents, the CW met Jackson at an agreed upon location and then entered Jackson's vehicle. Jackson then gave the CW clear plastic bags containing a substance that tested positive for cocaine base in exchange for $300-600 in cash. PSR ¶¶ 9-16. In the fourth incident, the CW met Jackson near Jackson's home in Boston. Jackson entered the CW's vehicle and gave the CW a substance in a plastic bag in exchange for $1,000.  The substance tested positive for cocaine. PSR ¶¶ 17-18.  In October, Jackson was searched following his arrest and agents felt what they believed to be contraband on his person. Jackson retrieved the item, which was a clear plastic bag containing an off-white rock like substance. PSR ¶ 11.  The substance tested positive for cocaine base.  *Id.*  Agents also located two iPhones on Jackson's person, which were later searched and found to contain drug-related text messages.  *Id*.  Agents executing a search warrant at Jackson's home also located a plastic bag containing oxycodone, a bag containing marijuana, and digital scales. PSR ¶ 19.  The total converted drug weight of the tested substances across all transactions and Jackson's arrest as described in the PSR was 81.80 kilograms. PSR ¶ 23.  Under the 2021 USSG, had the cocaine base been treated the same as cocaine powder under the Guidelines, the converted drug weight

---

[1] At the time this memo was submitted, the Final Presentence Investigation Report was not yet available; accordingly, all citations to the "PSR" are to the Initial Disclosure of the Presentence Investigation Report.

would have been 7.45 kilograms.

Because the material facts are unopposed, an evidentiary sentencing hearing is not necessary.

## DISCUSSION

I.   **Sentencing Guideline Calculation**

   A.  **Probation's Calculation of GSR**

Based on its computation of Jackson's total offense level as 19 after a three-level reduction for prompt acceptance of responsibility, and his criminal history category as V, the United States Probation Office ("Probation") has calculated a GSR in this case to include a term of incarceration from 57-71 months; a term of supervised release of 3 years to life; a fine of $10,000 to $2 million; and a special assessment of $200. The Government concurs that Probation has calculated the GSR correctly based on the 2021 Guidelines Manual.  The Government does not contend that there are any legal questions not adequately addressed in the PSR.

   B.  **Re-Calculation of GSR to Eliminate Powder-to-Crack Disparity**

However, the Government notes that the USSG treats cocaine base more harshly than cocaine power.  Specifically, in this case, the Base Offense Level is 22 (USSG § 2D1.1(c)(9)) based on the converted drug weight of 81.80 kilograms.  Had the cocaine base in this case been treated the same as cocaine powder is treated in the 2021 USSG, the converted drug weight would have been 7.45 kilograms, and the Base Offense Level would have been Level 12 (USSG § 2D1.1(c)(14)), which would have resulted in a GSR of 21-27 months (the "Re-calculated GSR").  As the Government argues below, in applying the § 3553(a) factors, the Court can and should find the powder-to-crack disparity is unwarranted and results in a GSR that over-states

3

the seriousness of the offense. Accordingly, the Government is moving for a non-guideline sentence of 27 months.

## II. Application of the Section 3553(a) Factors

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2). These factors include the nature and circumstances of the offenses and the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant. They also require courts to consider the kinds of sentences available, and the GSR. In this case, the proposed sentence of imprisonment of 27 months is sufficient, but not greater than necessary, to achieve the goals of § 3553(a)(2).

### A. Application of the 3553(a) Factors Points to the Proposed Sentence

#### 1. Nature and Circumstances of Offense

The PSR holds Jackson accountable for at least 22.054 grams of cocaine base, 9.0624 grams of cocaine, 180 milligrams of Oxycodone and 32.9 grams of marijuana. PSR ¶ 23. These drugs pose serious risks to the health and safety of the community. Several of the drug deals in which Jackson sold cocaine base were conducted in broad daylight in locations in Boston and Cambridge in which many law-abiding citizens live and conduct business, risking their safety and quality of life.

> 2. **Seriousness of Offense; Respect for the Law; Just Punishment; Deterrence; Protection of Public; Elimination of Unwarranted Sentence Disparities**

The seriousness of these crimes and the relevant conduct must not be overlooked. Jackson sold cocaine base and cocaine powder, powerful drugs that have been linked to any number of societal harms, including intractable addictions and fatal overdoses. The impact of Jackson's crimes on his drug customers also must not be overlooked.  Although the purchaser in the charged offense was a CW who neither ingested the drugs nor distributed them for ingestion by others, the intended customers of the cocaine base and cocaine powder were individuals who were ingesting these substances.  Doubtless, Jackson's conduct fed many others' addictions.  The effect of Jackson's conduct on these individuals must also be considered.  Moreover, the connection between the illegal drug business and violent crime must also be considered.

That said, the Department of Justice does not believe that offenses involving crack cocaine are more inherently more serious than offenses involving cocaine powder, and thus the Department supports elimination of the powder-to-crack sentencing disparity.  This Court may, consistent with the law and current sentencing framework, consider whether the powder-to-crack disparity is warranted in assessing the Section 3553(a) factors. *See Kimbrough v. United States*, 552 U.S. 85, 106-08 (2007).  The Government suggests that the powder-to-crack sentencing disparity is not warranted.  As discussed in the Department of Justice's statement before the United States Senate Judiciary Committee in support of the EQUAL Act (Dkt. No. 54-1), in 1995, after studying the issue, the U.S. Sentencing Commission concluded that sentences for all forms of cocaine trafficking should be strong to address the harms caused by these crimes, but the disparate treatment of powder cocaine and cocaine base was not justified. *Id.* at 2 (citing U.S. Sentencing Commission, *Special Report to Congress, Cocaine and Federal Sentencing*

*Policy* (February 1995)). Moreover, U.S. Sentencing Commission data indicate that in 2020, 77.1% of defendants in crack cocaine cases are Black. U.S. Sentencing Commission, *Quick Facts, Crack Cocaine Trafficking Offenses*, 2021, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Crack_Cocaine_FY20.pdf (last accessed Dec. 7, 2021). The fact that the powder-to-crack disparity disproportionately impacts members of a particular race or ethnicity undermines fairness. And the disparities can be severe, as they are in this case – the difference between a 57-71 month GSR under the current Guidelines and a 21-27 month Re-calculated GSR if the crack cocaine in this case were treated the same as powder. The Court can and should avoid unwarranted disparities between the treatment of defendants convicted of cocaine base offenses and defendants convicted of cocaine powder offenses, and can do so in this case by imposing a sentence based on the Re-calculated GSR: 21-27 months.

A sentence at the high-end of the Re-calculated GSR properly reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, and protects the public from further crimes of the defendant, while avoiding unwarranted sentencing disparities among defendants with similar records found guilty of similar conduct.

### 3. History and Characteristics of Defendant

The Government acknowledges certain points raised in the PSR regarding Jackson's background. Jackson's family struggled financially and his parents abused drugs when he was a child. PSR ¶ 54. Jackson did not complete high school. PSR ¶ 71. Jackson has suffered from anxiety since witnessing the murder of his friend in 2008, and his adult criminal record begins

after his friend's murder.[2]  PSR ¶ 64.  Jackson also has a history of chronic substance abuse running through the time of his arrest and has expressed an interest in participating in substance abuse treatment programs. PSR ¶¶ 67-70.  Since 2019, he has been involved in a positive relationship with a woman who is employed and supportive of his maintaining sobriety.  PSR ¶ 60.  From 2016 through the time of his arrest in 2020, he was employed,[3] and his employer praised his work ethic and attitude and hoped he could return to work soon.  PSR ¶ 73.

The Government's recommendation also takes into account other, less sympathetic personal characteristics.   The defendant has a significant criminal history, including two prior convictions for unlawful possession of a firearm, one of which resulted in a 3-year sentence. PSR ¶¶ 40, 42.  In both of these cases, one in March 2010 and one in November 2012, officers searching Jackson's home pursuant to a search warrant located a loaded firearm (and, in March 2010, an obliterated serial number).  Additionally, a search of the two iPhones located on Jackson's person at the time of his arrest revealed drug-related text messages.  PSR ¶ 11.  At the time of his arrest in the instant case, he was considered an active member of the St. James Street/Marcella Gang by the Boston Police Department; on the date of his arrest, he referred to

---

[2] This homicide occurred on St. James Street in Roxbury and was believed to have been gang-related.  See PSR ¶¶ 64, 71; Marie Szaniszlo, *Teenage Homicide Victim Survived Earlier Stabbing*, THE BOSTON HERALD, June 20, 2008, available at: https://www.bostonherald.com/2008/06/20/teenage-homicide-victim-survived-earlier-stabbing/ (last accessed Dec. 7, 2021); Brian Ballou and Maria Cramer, *2 Shot As Cycle of Gang Retaliation Grips City*, BOSTON.COM, June 20, 2008, available at: http://archive.boston.com/news/local/articles/2008/06/20/2_shot_as_cycle_of_gang_retaliation_grips_city/ (last accessed Dec. 7, 2021).

[3] However, the government notes that at least one of the controlled purchases occurred during Jackson's work hours.  PSR ¶ 12.

himself at the police department as "Action Jackson from the original St. James crew."[4]  PSR ¶ 9.  Further, while in pre-trial detention Jackson received a disciplinary report for fighting. PSR ¶ 4.

Because of his serious criminal history and the fact that text messages on his phone indicate he was involved in dealing drugs to more individuals than only the Cooperating Witness, the Government believes that a sentence at the high end of the re-calculated Guidelines is appropriate even after balancing all of the more sympathetic factors.  The Government also agrees with the recommendation that Jackson should participate in the Bureau of Prisons' Residential Drug Abuse Program and with all of the special conditions proposed by Probation. The Government believes that three years of supervised release at the end of his prison sentence will provide Jackson the structure and support that he needs to maintain sobriety and employment and build a law-abiding future.

## CONCLUSION

A sentence of incarceration at the high end of the Re-calculated GSR, along with a significant period of supervised release, properly reflects the seriousness of the offenses of conviction, promotes respect for the law, adequately punishes Jackson for his criminal conduct, deters him and others from offending in the same way again, and protects the public.

For the foregoing reasons, and those to be articulated at the sentencing hearing, the Government respectfully recommends that this Court impose a sentence of 27 months imprisonment, to be followed by a three-year term of supervised release, as well as the required

---

[4] The government acknowledges the defendant's objection that he was not an *active* member of St. James/Marcella at the time of his arrest (Defense Objection No. 1) despite Boston Police Department's classification.  His admission at booking indicates at least that he was *at one point in time* an active member of the St. James Street gang.

$200 special assessment and forfeiture of the $2,920 specified in the indictment - $500 of buy money that he received in the charged drug sale, as well as the $2,420 found on his person at the time he possessed with the intent to distribute the additional drugs found on his person on the day of his arrest. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offenses and the goals of sentencing. Accordingly, the Government asks that the Court impose the proposed sentence.

The Government understands that the defendant is requesting an in-person sentencing on December 21, and the Government has no objection to that request.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its attorney,

NATHANIEL R. MENDELL
Acting United States Attorney

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney
John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, MA 02210
elianna.nuzum@usdoj.gov
617.748.3100

Dated: December 7, 2021

### CERTIFICATE OF SERVICE

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Elianna J. Nuzum*
Elianna J. Nuzum
Assistant United States Attorney

Dated: December 7, 2021